# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

DERMAMED TECHNOLOGIES CORP.,    *

                       *

    Plaintiff,            *

                       *

vs.                    *     CIVIL ACTION 10-00483-CG-B

                       *

PASSMORE LABS, *et al.*,       *

                       *

    Defendants.          *

## REPORT AND RECOMMENDATION

This matter, which was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), is before the Court on Defendants' Motion to Dismiss or, in the Alternative, Stay Based upon the Colorado River Doctrine, and for Lack of Personal Jurisdiction and Forum Non Conveniens (Doc. 8), and Plaintiff's Motion to Stay (Doc. 38). In their motion, Defendants argue that this Court should abstain from exercising jurisdiction over this action based on the Colorado River Doctrine[1]. Specifically, Defendants argue that California state

---

[1]Colorado River v. Water Conversation Dist. v. United States, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 483 (1976) authorizes a federal district court to dismiss or stay an action where there is an ongoing parallel action in state court, but only under "exceptional circumstances." Moorer v. Demopolis Waterworks and Sewer Bd., 374 F.3d 994, 997 (11th Cir. 2004); see also Amrosia Coal & Constr. Co. v. Morales, 368 F.3d 1320, 1328, (11th Cir. 2004)("federal courts can abstain to avoid duplicative litigation with state courts only in 'exceptional' circumstances.) This doctrine is an "extraordinary and narrow
(Continued)

court has already asserted jurisdiction over the parties'
dispute in a parallel action, that Alabama is a wholly
inconvenient forum, and that Alabama courts do not have personal
jurisdiction over Defendants. Plaintiff filed a response
opposing Defendants' motion, and argues that the two actions are
not parallel, and that there are no exceptional circumstances
which warrant abstention in favor of the California action.

The undersigned conducted an evidentiary hearing on April,
18, 2011. At the hearing, counsel for the parties clarified that
contrary to the assertions in their briefs, the California
action is currently pending in federal court, as opposed to
state court. Accordingly, counsel for the parties were directed
to submit supplemental briefs addressing the appropriateness of
abstention when parallel actions are pending in federal courts.
(Doc. 30). Both sides submitted supplemental briefs, and
Plaintiff submitted a Motion to Stay (Docs. 27, 28, 29, 30).

Upon consideration of the parties' representations at the
hearing, and review of the parties' motions and briefs, and the
case file, the undersigned **RECOMMENDS** that Defendants' motion

---

exception to the duty of a District Court to adjudicate a
controversy properly before it." <u>Colorado River</u>, 424 U.S. at
813; <u>see</u> <u>also</u> <u>Ambrosia Coal</u>, 368 F.3d at 1329 ("only the
clearest of justifications will warrant dismissal of the federal
action" under the *Colorado River* doctrine).

seeking dismissal be denied and that Plaintiff's motion seeking a stay pending resolution of Plaintiff's motion to dismiss by the United States District Court for the Southern District of California be granted.

## I. Background Facts

Plaintiff DermaMed Technologies Corporation ("DermaMed") is an Alabama corporation. (Doc. 1). Defendants Passmore Labs and Firefly 3D[2] are both organized and existing under the laws of California. Defendant Greg Passmore is a citizen and resident of California. (Doc. 1).

On September 12, 2007, Chris Johnson, president of DermaMed, DermaMed, and Defendants Greg Passmore and Passmore Labs ("Passmore") entered into an Agreement ("Agreement") wherein Defendants agreed to create and develop skin scanning software and a scanning device which was to specifically target the medical industry directly in the medium of scanning human skin. (Doc. 8 at 5). Pursuant to the Agreement, DermaMed agreed to pay Defendants $200,000 "for the completed development of all aspects of the Product[3] and for the transfer to and ownership of

---

[2] Defendants, in their Reply in support of their Motion, report that Firefly 3D, while once a California Corporation, has ceased to exist. (Doc. 15 at 6).

[3] The Product is defined as the "device, software, installation and training manuals, and patents, copyrights and trademarks related to same and other intellectual property, associated therewith." (Doc. 8, Ex. A).

the Product to [DermaMed]." (Doc. 8, Ex. A). Additionally, DermaMed agreed to issue to Passmore ten percent of DermaMed's stock upon execution of the agreement. (Id.) The Agreement also contains provisions which provide that: "The parties' agents shall select a mutually agreed upon state excluding Alabama and California, in which to handle all legal proceedings" and that the "Agreement shall be construed and interpreted in accordance with the laws of the state agreed upon by both parties and their agents, excluding Alabama and California." (Id.)

Before delivery of the device, a dispute arose among the parties, and Greg Passmore and Passmore Labs filed suit against DermaMed and Chris Johnson, in the Superior Court of the State of California, County of San Diego, styled Greg Passmore, et al. v. Chris Johnson, et al., Case No. 37-2010-00088907-CU-BC-CTL ("California Action"). In the California suit, Greg Passmore and Passmore Labs (hereinafter "the Passmore Defendants") assert that they fulfilled their obligations under the parties' Agreement, and that Johnson and DermaMed breached the agreement in a number of ways, including failing to provide expertise and creative direction, failing to provide financing for testing of the product, and failing to pay sums owed. The Passmore Defendants also assert negligent misrepresentation and unjust enrichment claims and seek a judicial determination of the parties' respective rights and duties under the Agreement,

including ownership, use, and licensing of the device that is the subject of the parties' Agreement.

Johnson and DermaMed sought the dismissal of the California action on the basis of forum non conveniens. The California state court denied the request, and held that the parties' forum selection clause was unenforceable because it is ambiguous and unreasonable. (Doc. 9, Exs. 2, 3, 4). Subsequent thereto, Johnson and DermaMed removed the California state court action to the U.S. District Court for the Southern District of California. The Passmore Defendants initially opposed removal and sought to have the action remanded to state court; however, following the evidentiary hearing before this Court, the Passmore Defendants withdrew their motion to remand. (Doc. 29-1) Thus, the California action remains pending before the U.S. District Court for the Southern District of California.

Shortly after the California action was filed, DermaMed filed suit on April 12, 2010 against the Passmore Defendants in the state Court of Harris County, Texas. (Doc. 16) In the Texas suit, DermaMed asserts claims for breach of contract and fraud. Specifically, DermaMed alleges that the Passmore Defendants

> created a system that is not in fact a "scanner," but rather a computer operated camera system; failed to act as though time were of the essence in carrying out their contractual responsibilities to produce a marketable and manufactured version of the skin scanning software/ scanning device; did not deliver training/ operational

> manuals as contractually required, forcing
> Plaintiff to attempt to handle this
> contractual obligation; failed to deliver
> the alpha product as agreed upon at the
> meeting of the Parties in July 2009; and
> failed to use their contractually required
> best efforts to obtain the requisite
> authorizations from governmental agencies.

(Doc. 16). At the evidentiary hearing before this Court, counsel for DermaMed advised that the Texas litigation has been abandoned because there is no basis for the Texas court to exercise jurisdiction over the Passmore Defendants absent their consent to jurisdiction.

On September 3, 2010, Plaintiff DermaMed filed the instant action against Defendants Passmore Labs, Greg Passmore and Firefly 3D. In the Complaint, DermaMed asserts claims for breach of contract, fraud and negligence. (Doc. 1). Specifically, Plaintiff alleges that these Defendants:

> created a system that is not in fact a
> "scanner," but rather a computer operated
> camera system; failed to act as though time
> were of the essence in carrying out their
> contractual responsibilities to produce a
> marketable and manufactured version of the
> skin scanning software/ scanning device;
> did not deliver training/ operational
> manuals as contractually required, forcing
> Plaintiff to attempt to handle this
> contractual obligation; failed to deliver
> the alpha product as agreed upon at the
> meeting of the Parties in July 2009; and
> failed to use their contractually required
> best efforts to obtain the requisite
> authorizations from governmental agencies.

(Doc. 1 at 2).

As noted supra, Defendants argue that this action should be dismissed because this Court lacks personal jurisdiction over Defendants or that, in the alternative, this case should be dismissed or stayed due to the existence of the parallel action that is pending in California. Plaintiff, on the other hand, argues that Defendants have sufficient contacts with the state of Alabama to support the exercise of jurisdiction over them, and that this Court should not abstain from resolving this action because the California action is an anticipatory action, and the majority of the facts giving rise to this dispute occurred in Alabama. Plaintiff also argues that this Court should stay this action until the California court resolves the motion to dismiss that Plaintiff recently filed in the California action. The gist of Plaintiff's motion to dismiss is that the California action should be dismissed as an anticipatory filing, and that Alabama is a more convenient forum. (Doc. 30-1)

## II. Analysis

### A. Personal Jurisdiction

The plaintiff has the burden of establishing a prima facie case of personal jurisdiction over a nonresident defendant. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268 (11th Cir. 2002). "Plaintiff's burden in alleging personal jurisdiction is to plead sufficient material facts to establish the basis for exercise of such jurisdiction." Future Tech. Today, Inc., v. OSF

Healthcare Sys., Inc., 218 F.3d 1247, 1249 (11th Cir. 2000). "A federal district court sitting in diversity may exercise personal jurisdiction to the extent authorized by the law of the state in which it sits and to the extent allowed under the Constitution." Meier, 288 F.3d at 1269. The Eleventh Circuit has stressed that when a district court does not conduct a discretionary hearing on a motion to dismiss for lack of personal jurisdiction,

> the plaintiff must establish a prima facie case
> of personal jurisdiction over a nonresident
> defendant... "A prima facie case is established
> if the plaintiff presents enough evidence to
> withstand a motion for directed verdict." The
> district court must accept the facts alleged
> in the complaint as true, to the extent they
> are uncontroverted by the defendant's affidavits...
> Where the parties' affidavits and deposition
> evidence conflict, the district court must construe all
> reasonable inferences in favor of the plaintiff.

Cable/Home Comm. Corp. v. Network Prods., Inc., 902 F. 2d 829, 855 (llth Cir. 1990) (internal citations omitted).

In a diversity action, the court "undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute, and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (2009). Because Alabama's long-arm provision, Rule 4.2(a) of the Alabama Rules of Civil Procedure, is coextensive with due process requirements, see Waterproofing Co. v. Hanby, 431 So. 2d 141, 145 (Ala. 1983), the court need only consider whether the

exercise of jurisdiction satisfies the requirements of due process. Oliver v. Merritt Dredging Co., 979 F.2d 827, 830 (11th Cir. 1992). Due process requires both that the defendant have "certain minimum contacts" with the forum state, and if such minimum contacts exist, that the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." Burnham v. Superior Court of Calif., 495 U.S. 604, 618, 110 S. Ct. 2105, 109 L. Ed. 2d 631 (1990)(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95(1945)). "This two-part test embodies the controlling due process principle that a defendant must have 'fair warning' that a particular activity may subject it to the jurisdiction of a foreign sovereign." Vermeulen v. Renault, U.S.A., Inc., 985 F. 2d 1534, 1545 (11th Cir. 1993).

There are two types of personal jurisdiction: "general" and "specific." There is general personal jurisdiction over a party when "the cause of action does not arise out of ... the [party's] activities in the forum State," but there are "continuous and systematic" contacts between the two. Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414-415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); Sloss Indus. Corp. v. Eurisol, 488 F.3d 922, 925 n.3 (11th Cir. 2007)("general jurisdiction ... can only be exercised if the defendant has 'continuous and systematic' contacts with the forum"); Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino, 447 F. 3d 1357, 1360 n.3 (11th Cir. 2006)("General

jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated.").

Specific jurisdiction is based on the party's contacts with the forum State that are related to the cause of action. Helicopteros, 466 U.S. at 414 at n.8. For specific personal jurisdiction, the contacts at issue must satisfy the minimum-contacts test. "Minimum contacts involve three criteria: First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the forum state must be such that [it] reasonably anticipate being haled into court there." Sculptchair, Inc. v. Century Arts, Ltd., 94 F. 3d 623, 631 (11th Cir. 1996) (citation omitted).

Based upon a review of the record evidence, the undersigned finds that notwithstanding Plaintiff's assertions to the contrary, this Court does not have general jurisdiction over Defendants. None of the Defendants have contacts with the state of Alabama sufficient to confer general jurisdiction upon this Court. The affidavit of Defendant Greg Passmore (Doc. 8-1), which was submitted in support of Defendants' motion, reflects that Mr. Passmore is a citizen of California, and that he has no bank accounts, or real or personal property located within the State of Alabama. The Passmore affidavit also reflects that the

corporate Defendants are authorized to do business in California, that the corporate Defendants are not incorporated or authorized to do business in Alabama, that the corporate Defendants do not have any employees residing in Alabama, that the corporate Defendants do not have a branch, office, telephone listing or mailing address in Alabama, that the corporate Defendants do not maintain a bank account in Alabama, or own any real or personal property in Alabama, and that the corporate Defendants do not direct any advertising specifically toward Alabama. (Id.)

Plaintiff does not dispute Defendants' showing, but instead argues that general jurisdiction is appropriate because of the "over 940 emails, telephone and conference calls, and mailings [which] have been continuous and systematic beginning prior to the parties' contract of September 12,2007 and continuing through August 2009." (Doc. 12 at 15). Plaintiff's assertions are not sufficient to establish general jurisdiction. They merely focus on the parties' Agreement and the facts that purportedly led to a breach of the agreement as opposed to establishing "continuous and systematic" contacts by Defendants, with the state of Alabama, which are unrelated to the lawsuit. Accordingly, Plaintiff's allegations fall way short of rising to the level of "continuous and systematic" contacts necessary for the exercise of general jurisdiction.

Plaintiff also argues that Defendants' contacts are sufficient to establish specific jurisdiction. According to

Plaintiff, in addition to the previously referenced email and telephone communications, Greg Passmore and his Company purposely and voluntarily availed themselves of this state by demanding and receiving a 10% stock benefit in Plaintiff corporation as part of the parties' agreement, and sold their services to the State by contracting to supply a product, which was to be delivered in the State, and for which they received payments from an Alabama corporation. Plaintiff further argues that because Defendants violated the forum selection clause, which requires that the parties agree to a forum other than Alabama and California, "it is fair and reasonable to surmise that the Defendants should and would have known that it would be entirely within reason for the plaintiff to file suit against Defendant[s] in Alabama." (Doc. 12 at 16).

In _Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc._, 207 F.3d 1351 (llth Cir. 2000), the Court of Appeals for the Eleventh Circuit addressed the issue of whether a nonresident insurance broker could be subjected to personal jurisdiction in Alabama arising from his sale of boat insurance to an Alabama resident. The Michigan insurance broker and his agency argued that they should not be subject to jurisdiction in Alabama because they did not have any direct contact with the plaintiff in Alabama, and that all of their dealings with the plaintiff was through a Florida insurance broker. The trial court denied the defendants' motion, and on appeal, the Eleventh Circuit held that assuming the allegations of the complaint to be true, the

Michigan insurance broker and agency should have anticipated being haled into an Alabama court. Id. at 1357-1358.

The Court stressed that while it is true that these defendants had no direct contact whatsoever with Alabama in connection with the events, the following facts, which were presumed true, were sufficient to establish that the defendants had purposefully availed themselves of the opportunity to do business with an Alabama resident in Alabama: the defendants chose to do business with an Alabama resident, they expected to receive a benefit from that business, they knew that the insurance they were procuring was for a boat owned by an Alabama resident which was located in Alabama and which would necessarily traverse Alabama waters; they undertook to and did procure insurance for the boat; they authorized a Florida broker to issue a binder for insurance that was sent to the plaintiff in Alabama, and they received a commission from the insurance premium. The court concluded that "[s]ince plaintiff's claim arises out of defendants' forum-related activities -- the procurement of his insurance policy -- jurisdiction over them is appropriate." Id. at 1357.

In this action, all of Defendants' contacts with Alabama were related to the skin scanning device, and these communications form the predicate of Plaintiff's cause of action. Given that this case is rooted in what Defendants communicated to Plaintiff orally and in writing, and in the terms of the Agreement, this case arose out of alleged misdeeds

that Defendants directed at the state of Alabama or at individuals who were physically present in the state of Alabama.

The United States Supreme Court has stated that "it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines," and that personal jurisdiction cannot be defeated merely because a defendant did not "physically enter" the forum state. Burger King, 471 U.S. at 476; see Cable/Home Comm. Corp. v. Network Prods., Inc., 902 F.2d 829, 858 (11th Cir. 1990) ("In our technologically sophisticated world permitting interstate business transactions by mail, wire, and satellite signals, physical presence by the nonresident defendant is not necessary for personal jurisdiction in the forum state."). Of course, in examining such electronic communication, Defendants must have "purposefully directed" their actions toward the forum state which would require that the telephone communications, for example, be substantial, and not a single telephone call. See Exhibit Icons, LLC v. XP Cos., LLC, 609 F. Supp. 2d 1282, 1298-99 (S.D. Fla. 2009) (finding minimum contacts were established for specific personal jurisdiction over Defendant that included 188 telephone calls and was unrefuted by Defendant); Future Tech., 218 F.3d at 1251 (finding no personal jurisdiction based on one telephone call and no visits to the forum state); see also Air Prods. and

Controls, Inc. v. Safetech Int'l, Inc., 503 F.3d 544, 551-52
(6th Cir. 2007) (numerous telephone calls, emails and facsimiles
initiated by the non-resident defendant can demonstrate
purposeful availment); Rambo v. Am. Southern Ins. Co., 839 F.2d
1415, 1418 (10th Cir. 1988) (telephone calls and letters may
provide sufficient contacts to meet due process standards);
Mayville v. Glatkowski, 2008 U.S. Dist. LEXIS 38055, 2008 WL
2037155, at * 5 (N.D. Ga. 2008) (telephone, email and written
correspondence adequate to establish personal jurisdiction).
Given the number of contacts initiated by Defendant, the Court
finds that Defendants had sufficient contacts with Alabama such
that they purposely availed themselves of the privilege of
conducting activities within Alabama and should have reasonably
anticipated being haled into court in this state.[4]

---

[4] This Court rejects Plaintiff's assertion that Defendant
Passmore's stock ownership is decisive on this issues. Case law
from this Circuit dictates that stock ownership, without more,
is not a sufficient minimum contact. See, e.g., Imaging Sci.
Found., Inc. v. Kane, 2010 U.S. Dist. LEXIS 51072, *16 (S.D.
Fla. May 24, 2010) (Mere ownership of stock in a Florida
corporation, standing alone, is not a sufficient basis for
jurisdiction); Oriental Imports and Exports, Inc. v. Maduro &
Curiel's Bank, N.V., 701 F.2d 889, 893 (11th Cir. 1983)(noting
that under earlier Florida statutes, investment by a nonresident
was not a sufficient basis for jurisdiction); Uible v.
Landstreet, 392 F.2d 467 (5th Cir. 1968) (no jurisdiction over
nonresidents who held stock in Florida corporation as investment
for profit). Cf. Shaffer v. Heitner, 433 U.S. 186, 216, 53 L.
Ed. 2d 683, 97 S. Ct. 2569 (1977) (holding that ownership of
shares in a corporation located in a particular forum does not
constitute purposeful availment of that forum). Neither is the
(Continued)

Next, the Court concludes that finding Defendants amenable to personal jurisdiction in Alabama comports with "traditional notions of fair pay and substantial justice." In this Circuit, the factors to decide whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice" are: 1) the burden on the defendant in defending the lawsuit; 2) the forum state's interest in adjudicating the dispute; 3) Plaintiff's interest in obtaining convenient and effective relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies and 5) the shared interest of the states in furthering fundamental substantive social policies. Cronin v. Washington Nat. Ins. Co., 980 F.2d 663, 671 (11th Cir. 1993) (citing Asahi Metal Industry Co. v. Superior Court of

_____

fact that Defendants entered into a contract with an Alabama corporation. See Electrosource, Inc. v. Horizon Battery Techs., Ltd., 176 F.3d 867, 872 (5th Cir. 1999) (citing Burger King, 471 U.S. at 478) ("A contract with an out-of-state party alone, although relevant, does not automatically establish sufficient minimum contacts."). It has long been recognized that "an individual's contract with an out-of-state party alone" cannot "automatically establish sufficient minimum contacts in the other party's home forum[]" sufficient for the exercise of personal jurisdiction over the non-resident defendant. Burger King, 471 U.S. at 478; Cf. Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1268 (11th Cir. 2010) ("[I]t is settled that entering a contract with a citizen of another state, standing alone, does not automatically satisfy the minimum contacts test.").

California, 480 U.S. 102, 113, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)); Madara, 916 F.2d at 1517.

The Court finds that Alabama has an interest in adjudicating a dispute that revolves around an out-of-state corporation engaged in a breach of contract for technology to be used in Alabama. Plaintiff will also obtain the most convenient and effective relief by litigating this case in Alabama. Lastly, "modern transportation and communication have made it much less burdensome" for an out-of-state Defendant to be sued in another state. Cable/Home, 902 F.2d at 858 (citations omitted). As such, personal jurisdiction can be exercised over Defendants.

**2. The First-Filed Rule**

Under the "first-filed" rule, when parties institute parallel federal litigation, the court initially having jurisdiction should hear the case. Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 1005)("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule"); See also Barnett v. Alabama, 171 F. Supp. 2d 1292, 1296 (S.D. Ala. 2001). The rule is not meant to be rigid, mechanical or inflexible, but is to be applied in a manner that best serves the interests of justice. Id. The primary purpose of the "first filed" rule is to conserve judicial resources and

avoid conflicting rulings. <u>Southline Steel Indus. Inc. v. Bland</u> <u>Metals, Inc.</u>, 2008 U.S. Dist. LEXIS 106450 (N.D. Ala. Dec. 10 2008)(citations omitted) The Eleventh Circuit follows the "first filed" doctrine, which provides that in the event of parallel litigation in different courts, the first court in which jurisdiction attaches should hear the case "in the absence of compelling circumstances." <u>Merrill Lynch, Pierce, Fenner &</u> <u>Smith, Inc. v. Haydu</u>, 675 F.2d 1169, 1174 (11th Cir. 1982)("In [the] absence of compelling circumstances, the court initially seized of a controversy should be the one to decide the case."). Thus, the "first-filed" rule should control in the absence of compelling circumstances. <u>Manuel</u>, 430 F. 3d at 1136; <u>See</u> <u>also</u> <u>Serco Servs. Co., L.P. v. Kelley Co</u>., 51 F.3d 1037, 1039 (Fed. Cir. 1995) ("The first filed action is preferred, even if it is declaratory, 'unless consideration of judicial and litigant economy, and the just and effective disposition of disputes requires otherwise.'"). The party objecting to jurisdiction in the "first filed" forum carries the burden of proving "compelling-circumstances" to warrant an exception to the "first filed" rule. <u>Manuel</u>, 430 F.3d at 1135.

In this case, it is beyond dispute that there is substantial overlap between the California and Alabama actions. In the California action, Greg Passmore, 3D Pipeline Corporation and Passmore Labs are the Plaintiffs, and DermaMed and its

President, Chris Johnson are the Defendants.  In this action, DermaMed is the Plaintiff, and Greg Passmore, Passmore Labs and Firefly 3D are the named Defendants.  Although the parties are slightly different, the Court is satisfied that there is substantial similarity between the parties in both actions.

There is also substantial overlap between the claims. Both actions squarely revolve around each parties' rights and responsibilities under the September 12, 2007 Agreement, as well as material representations that the parties allegedly made to one another.  Both sides claim that the other side breached the same contract and either misrepresented their abilities in adhering to the contract or were negligent in doing so.  The causes of action are part and parcel with each other.  It is clear that both cases will turn on the same operative facts, and that there will be substantial overlap between the claims and defenses asserted, and the evidence and witnesses relied upon. Moreover, resolution of both cases will turn on a finding regarding the rights and obligations between the parties.  For example, a judgment in favor of the Passmore Defendants in the California case will likely have a preclusive effect on key issues in this litigation, while an adverse judgment against the Passmore Defendants in this action will likely have a preclusive effect on key issues in the California litigation.

Accordingly, the undersigned finds that these actions constitute parallel proceedings.

Having determined that these cases constitute parallel federal proceedings, the next question centers on which action was filed first. The parties do not dispute that the California action was filed first, although it was initially filed in state court. As noted supra, Defendants initially sought to have the California action remanded to state court but later abandoned that attempt. Thus, the California action is pending in federal court and has the earlier filing date. While Plaintiff argues that the California filing is an anticipatory filing, and is in violation of the parties' agreement, which requires that litigation be filed in a mutually agreeable jurisdiction other than Alabama or California, an anticipatory filing does not mandate a refusal to follow the first-filed rule. Ven-Fuel, Inc. v. Dep't of the Treasury, 673 F.2d 1194, 1195 (11th Cir. 1982). It is but one equitable factor among many that the district court should consider in determining whether to hear an action. Manuel, 430 F. 3d at 1135-1136.

Moreover, Plaintiff's argument is made before the wrong court. Case authorities are legion for the proposition that the first-filed court, and not the second-filed court, should make the determination of whether to apply the first-filed rule. White v. Microsoft Corp., 2006 U.S. Dist. LEXIS 77010 (S.D. Ala.

Apr. 3, 2006); <u>see</u> <u>also</u> <u>Woo v. Nike, Inc.</u>, 2010 U.S. Dist LEXIS 38465 (N.D. Ga. Apr. 19, 2010)("[T]he 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred or consolidated.") (internal quotation marks omitted); <u>Valpak Direct Mktg. Sys., Inc. v. Valpak of Cincinnati, Inc.</u>, 2005 U.S. Dist. LEXIS 43834 (M.D. Fla. Sept. 30, 2005)(concluding that Southern District of Ohio, where first-filed action was submitted, is proper court to determine whether first-filed rule should apply and whether 1404(a) transfer is appropriate); <u>Kate Aspen, Inc. v. Fashioncraft-Excello, Inc.</u>, 370 F. Supp. 2d 1333, 1338 (N.D. Ga. 2005)("[T]he 'first-filed' rule generally requires the first court to decide whether the first-filed rule should apply").

As noted by Judge Steele in <u>White v. Microsoft Corp.</u>:

> [T]he first-filed rule generally confers priority to the first-filed court to decide a case that has been filed in two districts. Logically bound up in that priority to decide a case is the priority to decide whether the first-filed rule applies to that case. It would be ironic, to say the least, for this Court to usurp the first-filed court's authority by preemptively ruling on the application of the first-filed rule to these proceedings, all under the guise of honoring principles of comity obliging it to defer to the first-filed court. This Court declines to turn the first-filed rule on its head by dictating to the first-filed forum

> whether or not it must apply the first-filed
> rule to this dispute.

White[5], 2006 U.S. Dist. LEXIS 77010 at *14, n.9.

In this case, none of the parties have argued that special circumstances here render it inappropriate to submit the "first-filed rule" question to the Southern District of California, or that they are incapable of presenting this issue to that court, or that the California court is incapable of deciding the issue. In fact, the record reflects that Plaintiff has submitted this very issue to the Southern District of California by way of a motion to dismiss, and that the motion is currently pending before that Court. Accordingly, the undersigned finds that under the circumstances, this action should be stayed pending resolution of this issue by the Southern District of California. See White, 2006 U.S. Dist. LEXIS 77010 ("The well-marked and well-beaten path in these circumstances is to stay, not dismiss, this second-filed action while ... [the issue of] the applicability of the first-filed doctrine is litigated [in the

---

[5] In White, Judge Steele also observed that even if the court in the later-filed case were to determine that the first-filed rule should apply, district courts are not obliged to dismiss second-filed actions, but instead may select from an array of options once the first-filed rule is found to apply. He noted that several courts have opined that a stay of the second-filed action is a preferred remedy, especially where there is a reasonable possibility of prejudice or dismissal of the first-filed action.

first-filed action]); <u>Kate Aspen</u>, 370 F. Supp. 2d at 1339 (staying second-filed litigation pending decision of district court in forum where first-filed action was submitted as to whether first-filed rule should apply to both related cases); <u>Valpak</u>, 2005 U.S. Dist. LEXIS 43834 (similar).

## III. Conclusion

For the reasons set forth herein, and upon careful consideration of the record, the undersigned **RECOMMENDS** that Defendants' Motion to Dismiss or, in the Alternative, Stay Based upon the <u>Colorado River</u> Doctrine, and for Lack of Personal Jurisdiction and Forum Non Conveniens be denied, that Plaintiff's Motion to Stay be granted, and that this action be stayed until a ruling on Plaintiff's Motion to Dismiss, which is pending before the U.S. District Court for the Southern District of California. The undersigned further recommends that the parties be **ordered** to file joint monthly status reports, which apprise the Court of the status of Plaintiff's Motion to Dismiss.

The attached sheet contains important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this **21st** day of **April, 2011**.


_____/s/ SONJA F. BIVINS_____
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.  *Objection.*  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  See 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[6] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed de novo and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[6] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    ***Transcript (applicable Where Proceedings Tape Recorded).*** Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this **21st** day of **April, 2011.**

_____**/s/ SONJA F. BIVINS**_____
      **UNITED STATES MAGISTRATE JUDGE**